## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KILWINS CHOCOLATES FRANCHISE, INC., )
a Michigan corporation, )
                                   )
               Plaintiff, )        Case No.
                                   )
     v. )
                                     )
AQIL IMDAD, A&Z ICE CREAM )
PARLOR, LLC, an Illinois limited liability )
Company, and DOES 1-10, )
                                     )
              Defendants. )

## COMPLAINT

The plaintiff Kilwins Chocolates Franchise, Inc. ("KCF"), for its Complaint against the defendants Aquil Imdad ("Imdad"), A&Z Ice Cream Parlor, LLC ("A&Z"), and Does 1-10, alleges as follows:

## PRELIMINARY STATEMENT

This action arises out of the defendants' unauthorized sale of "Kilwins" brand ice cream and unauthorized use of the federally registered mark "Kilwins" and related marks. Imdad is the owner of A&Z, which operates an ice cream parlor in South Barrington, IL under the name "Scoop Society." Imdad claims to own a total of five ice cream parlors. KCF is the owner and franchisor of the "Kilwins" system of shops featuring chocolates, ice cream, and confections. "Kilwins" brand ice cream is sold exclusively at "Kilwins" shops and through no other chains of distribution. Nonetheless, Imdad obtained "Kilwins" brand ice cream through back channels that he has misrepresented, and is selling that ice cream under the "Kilwins" brand from at least at his Scoop Society store. The "Kilwins" brand ice cream is produced and distributed to legitimate "Kilwins" shops in tubs bearing the "Kilwins" name and marks, and is handled, preserved, and presented to

the public under strict standards developed and implemented by KCF. The defendants are not following those standards, and KCF has no way to control the nature and quality of the ice cream and service being offered to the public. Furthermore, until KCF demanded that he stop, the Scoop Society store displayed a "Kilwins" sign. Despite representing to KCF that he had ceased his sale of "Kilwins" brand ice cream, Imdad is continuing to sell "Kilwins" brand ice cream from tubs bearing the "Kilwins" name, but without following the procedures that KCF requires at authorized "Kilwins" shops to protect the nature and quality of the ice cream bring sold under its marks. Indeed, Imdad recently attempted to place another large order with his source of "Kilwins" ice cream.

KCF is entitled to preliminary and permanent injunctive relief, damages, declaratory relief, and attorneys' fees.

## JURISDICTION AND VENUE

1.     This is a civil action arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*. and state common law.

2.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

3.     Jurisdiction exists under 28 U.S.C. §§ 1331 and 1367 because this case arises under 15 U.S.C. §§ 1501 *et seq*. and the Court has supplemental jurisdiction over state law claims related to the federal claims.

4.     Jurisdiction exists under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. KCF is a corporation organized under the laws of Michigan with its principal place of business in Petoskey, Michigan. The defendant Imdad is a citizen and resident of Illinois. A&Z is

a limited liability company organized under the laws of Illinois whose sole member, on information and belief, is Imdad. A&Z's principal place of business is in South Barrington, IL. The Doe defendants are Imdad's other entities, who on information and believe are citizens of Illinois.

5.    Personal jurisdiction exists over the defendants, and venue is proper in this Court. The defendants are all citizens of this state and reside in this district, and the events at issue took place predominantly in this district.

## THE KILWINS SYSTEM

6.    KCF is the franchisor of the "Kilwins" franchise system. KCF owns the federally registered mark "Kilwins," U.S. Reg. No. 1276447, which is incontestable pursuant to 15 U.S.C. § 1065, and related marks that are used in connection with "Kilwins" shops (the "Kilwins Marks"). KCF licenses others to use the Kilwins Marks and operate "Kilwins" shops. KCF (including its predecessor) and its licensees have operated "Kilwins" shops since 1981. There are 149 "Kilwins" shops throughout the country, including eleven in Illinois..

7.    "Kilwins" shops specialize in the sale of ice cream, fudge, handmade chocolates, and other confections. "Kilwins" shops are operated in accordance with KCF's detailed standards and specifications. KCF licenses to franchisees the Kilwins Marks, as well as the trade dress, recipes, methods, and specifications that KCF has developed (the "Kilwins System").

8.    "Kilwins" shops and products are distinctive. The recipes, specifications, trade dress, and other aspects of the Kilwins System are the product of substantial investment by KCF, have developed substantial goodwill, and have immeasurable value to KCF.

9.     The Kilwins Marks have become synonymous in the minds of consumers with the high quality products and services that are offered at legitimate, licensed "Kilwins" shops. The "Kilwins" Marks have achieved secondary meaning.

10.    KCF provides its franchisees with detailed specifications concerning the sale of ice cream.  These include standards for the upkeep of ice cream cases, maintaining the proper temperature in freezers, the proper placement of flavors in the dipping case, the proper procedure for maintaing ice cream tubs to avoid buildup around the rim from falling into the ice cream, the proper procedure for changing out tubs, the proper rotation of ice cream in the freezer, the proper handling of ice cream while serving customers, procedures for customer complaints about ice cream, and the proper communication to customers about allergens and dietary concerns.

11.    Both by its standards and in its franchise agreements, KCF prohibits the sale of its ice cream to any customer that sells, resells, or intends to resell it.  KCF's stated policy is that customers should enjoy "Kilwins" ice cream in "Kilwins" stores to ensure that the ice cream is handled and delivered in accordance with KCF's standards.

### THE DEFENDANTS' UNAUTHORIZED
### SALE OF "KILWINS" BRAND ICE CREAM.

12.    In August 2023, KCF became aware of an ice cream parlor in South Barrington, IL called Scoop Society, which was prominently displaying a sign bearing the "Kilwins" name and selling ice cream that purported to be "Kilwins" brand ice cream.

13.    On further investigation, KCF confirmed that there was a "Kilwins" sign on display at the Scoop Society store. A picture of the sign is reproduced as Exhibit 1 to this Complaint.

14.    KCF also confirmed that the Scoop Society store was selling ice cream from tubs bearing the "Kilwins" name and mark and with lot numbers that matched the numbers that are placed on authentic "Kilwins" ice cream. As of mid-August, there were approximately 16 tubs of

"Kilwins" ice cream for sale in the Scoop Society store. Copies of labels from two of the ice cream tubs containing "Kilwins" brand ice cream are Exhibit 2 to this Complaint.

15.     The Scoop Society store is not following, and has never followed, KCF's requirements for the handling, preservation, and presentation of "Kilwins" ice cream. KCF has no control over the nature and quality of the goods and services being offered at the Scoop Society store in general, or in connection with the sale of "Kilwins" brand ice cream in particular. Details such as ingredient lists, nutrition information, and other key consumer data were neither verified nor ascertainable.

16.     On or about August 16, 2023, KCF, by its counsel Lee J. Plave, sent a cease and desist letter to the defendants. The letter advised them that they were not authorized to sell "Kilwins" ice cream, and demanded that the defendants cease selling "Kilwins" brand ice cream, disclose to KCF the source of the "Kilwins" ice cream, and confirm in writing that they would comply by returning a signed copy of the letter. A copy of the cease and desist letter is Exhibit 3 to this Complaint.

17.     On August 21, 2023, the defendant Imdad sent a text message to Mr. Plave confirming receipt of the letter and indicating that his lawyer would be calling "in a few days." When Mr. Plave texted requesting the name of Imdad's lawyer, Imdad responded:

> *You have my promise*
> *My Attorney will be contacting*
> *your office today!!!!!!!!!!*
> *i am extremely busy at my*
> *primary job*
> *My 5 ice cream shops are side*
> *business*
> *We will do exactly what you want*
> *Done*
> *i don't want any trouble sir.*
> *But you gonna have to be little*
> *Patient.*

> *i picked up your Fed Ex mail last*
> *night and faxed it to my Attorney*
> *this Morning. We are gonna*
> *respond to you as soon as*
> *possible. (sic)*

18.     The next day, August 22, 2023, Imdad identified his lawyer as Margaret Christy and promised that his lawyer "will be contacting you today."  When no lawyer for any of the defendants contacted KCF's counsel that day or for the following week, KCF's counsel left a voicemail and sent to an email (attaching a copy of the cease and desist letter) to Ms. Christy on August 29, 2023. That afternoon, Ms. Christy called Mr. Plave and promised to follow up with her client.

19.     On September 1, 2023, Ms. Christy e-mailed Mr. Plave, and in her e-mail, Mr. Christy wrote that Mr. Imdad had complied with the demands set forth in Mr. Plave's August 16, 2023 cease and desist letter. Ms. Christy attached a copy of the cease and desist letter signed by Imdad to confirm that he did, indeed, comply. A copy of that signed copy is Exhibit 4 to this Complaint.

20.     Imdad had not complied with the demands contained in the cease and desist letter on September 1, 2023 and has not to this day.

21.     Imdad covered over, but did not remove, the "Kilwins" sign.

22.     Imdad continued to sell "Kilwins" brand ice at his Scoop Society ice cream parlor. Photos show that Imdad also displayed the trademarks of three other brands at his Scoop Society ice cream parlor: "Baskin-Robbins", "Oberweis", and "Starbucks".

23.     Imdad provided a story about the source of the "Kilwins" ice cream he was selling. Imdad's story about the source of the "Kilwins" ice cream was that it came from a truck driver who brought the ice cream from North Carolina and/or Florida.

24.     KCF's investigation has revealed that Imdad's story is false.   In fact, Imdad purchased "Kilwins" ice cream from a "Kilwins" franchisee in Illinois (the "Illinois Franchisee"). On information and belief, Imdad approached the Illinois Franchisee posing as a caterer called "AJ Green Catering" and claiming to be "AJ Green."  Imdad told the franchisee that he wanted to buy a large quantity of "Kilwins" ice cream to have on hand for use at large catering functions.

25.     The caterer's business card identified him as "AJ Green" and included the name "Aqil" as the owner/operator, an e-mail address that included defendant Imdad's first name "Aqil" (aquiloo7@yahoo.com), and also included a phone number that is, in fact, defendant Imdad's phone number.  A copy of the business card is Exhibit 5 to the Complaint.

26.     On information and belief, Imdad lied to the Illinois Franchisee about his identity and the stated use of the "Kilwins" brand ice cream he proposed to purchase because he knew that the Illinois Franchisee was not authorized to sell "Kilwins" ice cream to a buyer other than a "Kilwins" franchisee who planned to resell it at retail, and erroneously believed that the Illinois Franchisee was authorized to sell to a buyer who planned to use it at catering functions.

27.  Section 1.4 of the Illinois Franchisee's Kilwins Franchise Agreement provides, in part:

1.4  <u>Limits on Where You May Sell</u>.  You agree that:

          \*          \*          \*          \*

1.4.2.  You will only offer and sell items (including Approved Products) face-to-face to retail customers for consumption on the Store's premises, for personal, carry-out consumption, and delivery service in a manner that complies with the standards set out in the Manual (as defined in Section 3.3 below);

          \*          \*          \*          \*

1.4.4  You will not give, sell, or otherwise provide Approved Products to end-users or any other entities that sell, resell, or use (or that plan to sell, resell or use)

7

the Approved Products (for example, gift shops and/or similar type stores, hotels, or restaurants), except as provided in Section 1.6 below.

28.     On information and belief, whether or not Imdad was aware of this specific language in the Illinois Franchisee's Franchise Agreement, he was aware of a restriction of this kind placed on "Kilwins" franchisees, and for that reason, intentionally misrepresented his identity and his planned use of the "Kilwins" ice cream.

29.     On information and belief, Imdad intentionally lied about the source of the "Kilwins" ice cream he was selling to throw KCF off the track and enable Imdad to continue purchasing and reselling "Kilwins" ice cream.

30.     Indeed, in late October 2023, after misrepresenting to KCF and its counsel about the source of the "Kilwins" ice cream, Imdad attempted to make another purchase of 92 tubs of "Kilwins" ice cream from the Illinois Franchisee.

31.     Imdad knew that he did not have the right to use the "Kilwins" name and mark, and also knew that he did not have the right to display the "Kilwins" name and mark at his Scoop Society store.

## COUNT ONE
### (Federal Trademark and Service Mark Infringement)

32.     KCF re-alleges each and every other paragraph of this Complaint.

33.     The defendants are continuing to use and display the "Kilwins" Marks without authorization or license from KCF. They are selling ice cream bearing the mark "Kilwins" without authorization or license from KCF, and are not following the procedures and requirements that KCF has in place for authorized resellers of "Kilwins" ice cream as to the handling, preservation, and presentation of "Kilwins" ice cream.

34.     The defendants' continued use of the "Kilwins" Marks, without right, is likely to cause confusion in the public mind concerning the source, affiliation, or sponsorship of goods and services being offered under the "Kilwins" Mark, and is likely to cause the public to believe, contrary to fact, that the defendants are authorized to sell "Kilwins" ice cream and are doing so in conformity with the requirements of the "Kilwins" System.

35.     The defendants are willfully, intentionally, and knowingly using trademarks, service marks and designations that are identical to, substantially indistinguishable from, or confusingly similar to the "Kilwins" Mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

36.     The defendants' conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the defendants' conduct is causing monetary damage to KCF in an amount to be proven at trial.

**COUNT TWO**
**(Federal Unfair Competition)**

37.     KCF re-alleges each and every other paragraph of this Complaint.

38.     The defendants' continuing unauthorized use of the KILWINS Marks in connection with the unauthorized sale of "Kilwins" ice cream constitutes false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which are likely to cause confusion or mistake, or to deceive as to the affiliation, connection, or association between the defendants and KCF on the other hand, or as to the origin, sponsorship, or approval of the goods or services being offered by the defendants, or as to KCF's approval of the defendants' activities.

39.     The defendants' conduct violates Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40.     The defendants' conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the defendants' conduct is causing monetary damage to KCF, in an amount to be proven at trial.

## COUNT THREE
### (Common Law Trademark and Service Mark Infringement)

41.     KCF re-alleges each and every other paragraph of this Complaint.

42.     The "Kilwins" Mark is distinctive and has developed a secondary meaning in the public mind in that consumers have come to know and recognize the "Kilwins" Mark as identifying the operation of stores by KCF and its franchisees. The "Kilwins" Mark has become known by the public as indicative of the goods and services provided by KCF and its franchisees at "Kilwins" stores.

43.     The public is likely to be confused, deceived or otherwise manipulated by the defendants' unauthorized use of the "Kilwins" Marks. Therefore, the defendants' use of the "Kilwins" Mark without right, license, or authorization constitutes common law service mark infringement.

44.     The defendants' conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the defendants' conduct is causing monetary damage to KCF, in an amount to be proven at trial.

## COUNT FOUR
### (Common Law Unfair Competition)

45.     KCF re-alleges each and every other paragraph of this Complaint.

46.     The defendants' conduct constitutes unfair competition under applicable state law.

47.     The defendants' conduct is causing irreparable injury to KCF's reputation and goodwill, which will continue unabated unless enjoined by this Court. In addition, the defendants' conduct is causing monetary damage to KCF, in an amount to be proven at trial.

## COUNT FIVE
### (Violation of Illinois Uniform Deceptive Trade Practices Act)

48.     KCF re-alleges each and every other paragraph of this Complaint.

49.     The defendants have willfully and intentionally caused likelihood of confusion among the consuming public as to the source, sponsorship, approval or certification of the "Kilwins" ice cream they are selling.

50.     The defendants have willfully and intentionally caused likelihood of confusion among the consuming public as to the affiliation, connection, or association with of certification by KCF and the "Kilwins" franchise system in connection with their unauthorized sale of "Kilwins" ice cream.

51.     The defendants intentionally made misrepresentations as to the source and origin of the "Kilwins" ice cream they have been selling for the purpose of continuing their unauthorized sale of "Kilwins" ice cream.

52.     The defendants intentionally made misrepresentations of fact concerning their cessation of the sales of "Kilwins" ice cream for the purpose of causing KCF to forbear from filing this action.

53.     The defendants' conduct violates the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 Ill. Comp. Stats. Ch. 815, § 510/1 et seq.

54.     KCF has suffered and is continuing to suffer irreparable harm as a result of the defendants' violations of IUDTPA, which will continue unabated unless enjoined by this Court..

55.     KCF has also suffered monetary damage due to the defendants' violations of IUDTPA in an amount to be proven at trial.

## COUNT SIX
### (Fraud)

56.     KCF re-alleges each and every other paragraph of this Complaint.

57.     The defendants made false statements of material facts to KCF, including: (a) Imdad's statements in writing and through his counsel, that the defendants had ceased selling "Kilwins" brand ice cream; and (b) Imdad's statements that the source of the "Kilwins" brand ice cream was a truck driver who had acquired the produce in North Carolina and/or Florida.

58.     The defendants knew that the statements were false.

59.     The defendants made the statements for the purpose of inducing KCF to forbear from taking action to compel them to cease selling "Kilwins" brand ice cream and to forbear from taking action against their actual source of the "Kilwins" brand ice cream, a franchisee in Illinois.

60.     KCF did in fact forbear from taking more immediate action to vindicate its rights, and did so until it learned that the defendants' statements were false.

61.     KCF has been damaged by its reliance on the defendants' false statements and by the defendants' continuing sale of "Kilwins" ice cream after representing that they had ceased doing so.

## COUNT SEVEN
### (Tortious Interference with Contract)

62.     KCF realleges each and every paragraph of this Complaint.

63.     At all relevant times, the Illinois Franchisee had a valid contract with KCF.

64. The defendants were aware that the Ilinois Franchisee had a contract with KCF that contained a restriction concerning sales to those who would resell "Kilwins" products at retail through channels other than "Kilwins" stores.

65. Through misrepresentations to the Illinois Franchisee that they were a catering company that intended to use the "Kilwins" ice cream that they wished to purchase, rather than a retail business that would resell "Kilwins" ice cream to customers, the defendants intentionally and unjustifiably induced the Illinois Franchisee to breach his Franchise Agreement with KCF.

66. The defendants' conduct caused the Illinois Franchisee to breach its Franchise Agreement with KCF.

66. KCF has suffered monetary damage as well as irreparable harm as a result of the defendants' conduct.

67. The defendants' conduct constitutes tortious interference with the Illinois Franchisee's Franchise Agreement.

WHEREFORE, KCF demands entry of judgment in its favor:

A.    Preliminarily and permanently enjoining the defendants, and all those acting in concert with them, including their agents, servants, employees, and attorneys, from:

(i)    using the "Kilwins" Marks in connection with the advertising, promotion or sale of any product or service;

(ii)    committing any other act that infringes the KILWINS Mark or otherwise unfairly competes with KCF or the KILWINS System; and

(iii)    selling any "Kilwins" brand products, including without limitation "Kilwins" brand ice cream;

B.    Ordering the defendants to file with the Court and serve on counsel for KCF, within five (5) calendar days after service of any injunction issued herein, a written report setting forth in detail, under oath, the manner and form in which they have complied with such injunction;

C.    Awarding KCF, pursuant to 15 U.S.C. § 1117, (a) the defendants' profits, (b) KCF's damages, and (c) the costs of the action;

D.    Awarding KCF treble damages and attorneys' fees pursuant to 15 U.S.C. §§ 1117(a) and (b);

E.    Awarding KCF damages, costs, and attorneys' fees for the defendants' violations of the IUDTPA;

F.    Awarding KCF its actual damages as well as punitive damages arising out of the defendants' fraud;

G.    Awarding KCF its actual damages as well as punitive damages arising out of the defendants' tortious interference with contract;

H.    Ordering the defendants, jointly and severally, to indemnify KCF for any claims arising out their sale of "Kilwins" brand ice cream;

I.    Awarding KCF such other and further relief as the Court may deem appropriate.

Dated:  November 30, 2023        Respectfully submitted,

By:      /s/ Michael T. Layden
Michael T. Layden
Deirdre A. Close
CROKE FAIRCHILD DUARTE & BERES LLC
191 North Wacker Drive, 3100
Chicago, IL   60606
312-641-0881
MLayden@crokefairchild.com
DClose@crokefairchild.com

     /s/ James C. Rubinger
James C. Rubinger
(pro hac vice motion to be filed)
PLAVE KOCH PLC
12005 Sunrise Valley Drive
Suite 200
Reston, Virginia 20191-3404
Telephone: (703) 774-1208
Facsimile: (703) 774-1201
Email: jrubinger@plavekoch.com

KILWINS CHOCOLATES FRANCHISE, INC.

# Exhibit 1



# Exhibit 2



003877    Kilwin's

BLUEBERRY WAFFLE CONE – 3027

INGREDIENTS: MILK, CREAM, cane syrup, blueberry wave (water, corn syrup, sugar sorbate), blueberry base (sugar, blueberries, water, applesauce (apples, corn syrup, water ascorbic acid), natural flavors, pectin, citric acid, agar agar, locust bean gum, FD&C red 40, FD&C blue 1, potassium sorbate and sodium benzoate flour, niacin, reduced iron, thiamine mononitrate, riboflavin, folic acid), brown sugar, natural flavor, OAT fiber, salt, SOY lecithin, vegetable oil (canola oil, palm oil, SOYBEAN oil, SOY lecithin)], sugar, COCONUT oil, NONFAT MILK, MILK, cocoa MILK, WHEY, stabilizer (mono & diglycerides, cellulose gum, guar gum).

Contains Milk, Wheat, Coconut, Soy.



DISTRIBUTED BY
KILWINS QUALITY CONFECTIONS
MFD. BY PLANT 39 – 111

0289                                          11123

003898

# Kilwin's

# ALL AMER 2 BERRY PIE – 3810

INGREDIENTS: MILK, CREAM, cane syrup, blueberry wave (water, corn syrup, blueberries, modified food starch, natural flavors, pectin, citric acid, potassium sorbate), strawberry swirl (strawberries, corn syrup, sugar, corn starch-modi water, citric acid, natural flavors, sodium benzoate [preservative], FD&C red sugared pie pieces (unenriched WHEAT FLOUR, sugar, palm oil, COCONUT [CREAM, salt], water, PASTEURIZED EGG, salt), corn syrup, NONFAT DRY M natural flavor, caramel color, stabilizer (mono & diglycerides, cellulose gum, gum).



CONTAINS: MILK, WHEAT, EGG, COCONUT



DISTRIBUTED BY
KILWINS QUALITY CONFECTIONS
MFD. BY PLANT 39 – 111

0446

10223




Exhibit 3



August 16, 2023

Mr. Aqil Imdad
A&Z Ice Cream Parlor LLC
9 Shoreside Drive
South Barrington, IL 60010

Mr. Aqil Imdad
A&Z Ice Cream Parlor LLC
dba "Scoop Social"
100 West Higgins Road, Unit L90
South Barrington, IL 60010

**Re:     Unauthorized Use of "Kilwins" Trademarks and
          Purported Sale of "Kilwins" Products**

Dear Mr. Imdad:

This law firm represents Kilwins Chocolates Franchise, Inc. ("**KCF**"). KCF is the owner and franchisor of the "Kilwins" confections and ice cream store system.

We are contacting you because KCF has recently learned that you have engaged in the unauthorized use of the KILWINS Marks (as that term as defined below) and sale of products under the KILWINS Marks at your "Scoop Society" business located at 100 West Higgins Road, Unit L90, in South Barrington, Illinois (the "**Store**").

As you likely know, since 1947 KCF and its franchisees have operated "Kilwins" confection and ice cream stores throughout the United States. KCF has worked hard to earn the loyalty of its customers and to create the goodwill associated with the "Kilwins" brand. To protect the experiences that KCF customers have in connection with the KILWINS brand, and KCF's valuable intellectual property rights, KCF has registered, or applied to register, its trademarks and service marks (the "**KILWINS Marks**") in the United States and elsewhere. These include certain marks that KCF registered <u>in May 1984</u> with the U.S. Patent & Trademark Office, including among others U.S. Registration Nos. 1276447, 3870466, 4126689, 4084068, 4088099, 4095558, and 4264060 for the mark "KILWINS" in various forms and designs, and for various classes. In addition, flavor names (such as TUTTLE and others) are also KCF's

**Plave Koch PLC**
12005 Sunrise Valley Dr, Suite 200
Reston, Virginia 20191-3404
United States of America

[www.PlaveKoch.com](www.PlaveKoch.com)

**Lee J. Plave**
LPlave@PlaveKoch.com
*direct phone* 703.774.1203
*direct fax* 703.774.1201

Mr. Aqil Imdad
A&Z Ice Cream Parlor LLC
August 16, 2023
Page 2



common-law and registered trademarks.[1] By now, the KILWINS Marks are famous and serve to designate the high-quality products offered by KCF and its franchisees. Like any other trademark owner, KCF acts as needed in order to protect its trademarks and other valuable intellectual property rights.

<u>Your Infringing Use of the KILWINS Marks</u>. We understand that you operate a business at the Store location under the name Scoop Social, which offers and sells ice cream and other items to walk-in customers. We have reviewed photographs that show you prominently display the KILWIN'S Marks on the dipping cabinets to describe the ice cream products that you sell and also your Store's wall. Online reviews of your business confirm that consumers are aware of your use of the KILWINS Marks and claimed sale of "Kilwins" brand ice cream. There is a likelihood of confusion relating to your intentional and unauthorized use of the KILWINS Marks, especially where you have sold goods of questionable (if not counterfeit) origin in an attempt to capitalize on the goodwill associated with the KILWINS Marks.

**<u>Your unauthorized use of the KILWINS Marks in the offer and sale of products at the Store infringes upon KCF's rights under the federal trademark law, known as the Lanham Act</u>**. The Lanham Act (15 U.S. Code § 1125) prohibits false designations of origin, false descriptions, and false representations when marketing and selling goods. The Lanham Act also prohibits unfair competition. Your commercial use of the KILWINS Marks dilutes the KILWINS Marks, 15 U.S. Code § 1125(c), and has been noticed by (and is confusing to) consumers, who appear to believe that you are authorized to offer and sell goods under the KILWINS Marks.[2]

<u>Your Sale of Products</u>. You recently spoke by phone and exchanged text messages with Mr. Jeffrey Deming of KCF. We understand that during those communications, Mr. Deming told you are not authorized to offer and sell "Kilwins" ice cream, that you are not licensed or otherwise permitted to use the KILWINS Marks, and to demand that you stop those actions. We understand that you declined to do so in those conversations with Mr. Deming. We also understand that you told Mr. Deming that you believe you are permitted to use the KILWINS Marks and that you purchased the "Kilwins" brand ice cream for $30,000 in cash from a seller that you do not know and cannot identify, from whom you did not obtain a receipt.

Your explanation of how you came into possession of purported "Kilwins" brand ice cream seems incredulous. By selling products for which you have no plausible explanation as to their origin, KCF has the legitimate concern that some or all of the ice cream that you are selling

---

[1] This includes products sold under names that are used in legitimate "Kilwins" shops, some of which are KCF's common-law and registered marks, including *Blueberry Waffle Cone*, *Georgia Peach*, *Marsh-Mallow S'more*, *Butter Pecan*, *Toasted Coconut*, *Fudgie Brownie*, *All-American Two Berry Pie*, *Kilwins Mud*, *Mackinac Island Fudge*, *Cappuccino Chocolate Chip*, *Sea-Salt Caramel*, *New Orleans Praline Pecan*, *Chocolate Chip*, *Cake Batter*, and *Kilwins Tracks*.

[2] We note that you also display other marks at your Store, including the BASKIN-ROBBINS, OBERWEIS, and STARBUCKS marks. We are not aware of and take no position as to whether you are making legitimate authorized use of those marks and/or offering products that are authentically those of the trademark owners.

Mr. Aqil Imdad
A&Z Ice Cream Parlor LLC
August 16, 2023
Page 3



under the KILWINS Marks is not legitimate "Kilwins" ice cream and may be counterfeit product.

**Accordingly, this letter is a formal demand that you to do the following**:

1. Stop Use of KILWINS Marks. You must immediately remove and cease any and all use of the KILWINS Marks in the Store and in any other setting.

2. Explain the Source of the Ice Cream. Explain to the undersigned the origin of the ice cream that you are selling under the KILWINS Marks, the party that sold those good to you, and the transaction(s) by which you obtained the product.

3. Stop Sales. Stop selling the ice cream that you claim to be "Kilwins" ice cream.

4. Complete, Sign, and Return a Copy of this Letter. As you'll see, there is a signature block on this page. Please complete, sign, and return that page by e-mail or fax **by the end of the day on Monday, August 21, 2023.**

KCF reserves its rights in this matter, which is without prejudice to KCF's rights. We ask for your prompt attention to this matter and look forward to your favorable response. If you have counsel, please have your counsel respond to this letter.

Sincerely,

Plave Koch PLC

By: _____
Lee J. Plave

By Federal Express

---

*I agree to complete all of the actions requested above:*

By: _____

Printed
Full Name _____

Date: _____, 2023

---

cc:     Registered Agents Inc.
        2501 Chatham Road, Suite R
        Springfield, IL 62704



**After printing this label**:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

  Shipment Receipt

**Address Information**

**Ship to:**
Mr. Aqil Imdad
A&Z Ice Cream Parlor LLC
9 Shoreside Drive

SOUTH BARRINGTON,  IL
60010
US
630-862-7597

**Ship from:**
Lee J. Plave
Plave Koch PLC
12005 Sunrise Valley Drive
Suite 200
RESTON,  VA
20191
US
7037741200


**Shipment Information:**
Tracking no.: 773076024658
Ship date: 08/16/2023
Estimated shipping charges:  42.32 USD

**Package Information:**
Pricing option: FedEx Standard Rate
Service type: Standard Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1   LBS
Declared Value: 0.00  USD
Special Services: Adult signature required
Pickup/Drop-off: Contact FedEx for courier pickup

**Billing Information:**
Bill transportation to: Plave Koch Main Acct-323
Your reference:  KCF (00021-0010 - C/D)
P.O. no.:
Invoice no.:
Department no.:

---

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

**Please Note**

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.



XN UGNA

TRK#
0201

7730 7614 1127

THU - 17 AUG 5:00P
STANDARD OVERNIGHT

ASR
IL-US

60010
ORD

ORIGIN ID:BCBA
LEE J. PLAYE
PLAYE KOCH PLC
12005 SUNRISE VALLEY DRIVE
SUITE 200
RESTON, VA 20191
UNITED STATES US

(703) 774-1200

SHIP DATE: 16AUG23
ACTWGT: 1.00 LB
CAD: 255056195/INET4640

TO MR. AQIL IMDAD
A&Z ICE CREAM PARLOR LLC
100 WEST HIGGINS ROAD
UNIT L90
SOUTH BARRINGTON IL 60010
(630) 862-7597
REF: KCF 00021-0010 - CID)
INV
PO
DEPT

BILL SENDER

FedEx
Express

J233123072501urr

593J5/7584/9AE3

---

**After printing this label**:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

 Shipment Receipt

## Address Information

**Ship to:**
Mr. Aqil Imdad
A&Z Ice Cream Parlor LLC
100 West Higgins Road
Unit L90
SOUTH BARRINGTON, IL
60010
US
630-862-7597

**Ship from:**
Lee J. Plave
Plave Koch PLC
12005 Sunrise Valley Drive
Suite 200
RESTON, VA
20191
US
7037741200

## Shipment Information:

Tracking no.: 773076141127
Ship date: 08/16/2023
Estimated shipping charges: 42.32 USD

## Package Information

Pricing option: FedEx Standard Rate
Service type: Standard Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1  LBS
Declared Value: 0.00  USD
Special Services: Adult signature required
Pickup/Drop-off: Contact FedEx for courier pickup

## Billing Information:

Bill transportation to: Plave Koch Main Acct-323
Your reference:  KCF (00021-0010 - C/D)
P.O. no.:
Invoice no.:
Department no.:

---

**Thank you for shipping online with FedEx ShipManager at fedex.com.**

## Please Note

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.



**After printing this label**:
1. Use the 'Print' button on this page to print your label to your laser or inkjet printer.
2. Fold the printed page along the horizontal line.
3. Place label in shipping pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.

**Warning**: Use only the printed original label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with the cancellation of your FedEx account number.
Use of this system constitutes your agreement to the service conditions in the current FedEx Service Guide, available on fedex.com.FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery,misdelivery,or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim.Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental,consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss.Maximum for items of extraordinary value is $1,000, e.g. jewelry, precious metals, negotiable instruments and other items listed in our ServiceGuide. Written claims must be filed within strict time limits, see current FedEx Service Guide.

    Shipment Receipt

**Address Information**

**Ship to:**
Select or enter
Registered Agents Inc.
2501 Chatham Road
Suite R
SPRINGFIELD,  IL
62704
US
(312) 442-0270

**Ship from:**
Lee J. Plave
Plave Koch PLC
12005 Sunrise Valley Drive
Suite 200
RESTON,  VA
20191
US
7037741200

**Shipment Information:**
Tracking no.: 773076271556
Ship date: 08/16/2023
Estimated shipping charges:  44.78 USD

**Package Information**
Pricing option: FedEx Standard Rate
Service type: Standard Overnight
Package type: FedEx Envelope
Number of packages: 1
Total weight: 1   LBS
Declared Value: 0.00  USD
Special Services: Adult signature required
Pickup/Drop-off: Contact FedEx for courier pickup

**Billing Information:**
Bill transportation to: Plave Koch Main Acct-323
Your reference:  KCF (00021-0010 - C/D)
P.O. no.:
Invoice no.:
Department no.:

---

Thank you for shipping online with FedEx ShipManager at fedex.com.

**Please Note**

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $1000, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.
The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

Exhibit 4



Mr. Aqil Imdad
A&Z Ice Cream Parlor LLC
August 16, 2023
Page 3

**PLAVEKOCH**

under the KILWINS Marks is not legitimate "Kilwins" ice cream and may be counterfeit product.

Accordingly, this letter is a formal demand that you to do the following:

1. Stop Use of KILWINS Marks. You must immediately remove and cease any and all use of the KILWINS Marks in the Store and in any other setting.

2. Explain the Source of the Ice Cream. Explain to the undersigned the origin of the ice cream that you are selling under the KILWINS Marks, the party that sold those good to you, and the transaction(s) by which you obtained the product.

3. Stop Sales. Stop selling the ice cream that you claim to be "Kilwins" ice cream.

4. Complete, Sign, and Return a Copy of this Letter. As you'll see, there is a signature block on this page. Please complete, sign, and return that page by e-mail or fax by the end of the day on Monday, August 21, 2023.

KCF reserves its rights in this matter, which is without prejudice to KCF's rights. We ask for your prompt attention to this matter and look forward to your favorable response. If you have counsel, please have your counsel respond to this letter.

Sincerely,

Plave Koch

By: _____
Joe S. Plave

By Federal Express

I agree to complete all of the actions requested above:

By: _____

Printed
Full Name AQil M. Imdad

Date: 9/1/ , 2023

cc:    Registered Agents Inc.
       2501 Chatham Road, Suite R
       Springfield, IL 62704

# Exhibit 5



